# No. 22-15188

## In the United States Court of Appeals
### FOR THE NINTH CIRCUIT

ORACLE USA, INC.; ORACLE AMERICA, INC.;
ORACLE INTERNATIONAL CORPORATION,

*Plaintiffs - Appellees,*

v.

RIMINI STREET, INC.,

*Defendant - Appellant.*

On Appeal From The United States District Court
For The District Of Nevada
Honorable Larry R. Hicks (No. 10-cv-106)

**ANSWERING BRIEF OF PLAINTIFFS-APPELLEES
ORACLE USA, INC., ORACLE AMERICA, INC.,
AND ORACLE INTERNATIONAL CORPORATION
[FILED PROVISIONALLY UNDER SEAL]**

Benjamin P. Smith
Sharon R. Smith
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

Dorian Daley
Peggy Bruggman
James C. Maroulis
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
(650) 506-4846

David B. Salmons
Raechel K. Kummer
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
david.salmons@morganlewis.com

*Attorneys for Appellees*
*Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation*

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Appellees

Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

certify that Oracle Corporation wholly owns, through one or more of its privately-

held wholly-owned subsidiaries, the Appellees in this action: Oracle USA, Inc.,

Oracle America, Inc., and Oracle International Corporation. No other publicly

held corporation owns 10% or more of the stock in any of the Appellees.

Dated: June 17, 2022

Respectfully submitted,

*s/ David B. Salmons*

David B. Salmons
Raechel K. Kummer
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
david.salmons@morganlewis.com

Benjamin P. Smith
Sharon R. Smith
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
benjamin.smith@morganlewis.com
sharon.smith@morganlewis.com

*Attorneys for Appellees*
*Oracle USA, Inc., Oracle America,*
*Inc., and Oracle International*
*Corporation*

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT...................................................i

TABLE OF CONTENTS....................................................................ii

TABLE OF AUTHORITIES.............................................................iv

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION....................................................3

STATEMENT OF THE ISSUE .........................................................4

STATEMENT OF THE CASE............................................................4

SUMMARY OF THE ARGUMENT....................................................19

STANDARD OF REVIEW................................................................22

ARGUMENT.................................................................................24

    I.    Rimini's Recycled Arguments Against the Scope of the Injunction Are Inappropriate for This Contempt Appeal...............24

    II.    The District Court Did Not Hold Rimini In Contempt For *De Minimis* Copying, So This Court Lacks Jurisdiction Over Rimini's *De Minimis* Copying Arguments...................................27

    III.    The District Court Did Not Abuse Its Discretion In Finding Rimini In Contempt For Violating The Injunction. ......................33

        A.    Rimini Concedes It Willfully Violated The Injunction Under Established Copyright Law.....................................33

        B.    The District Court Properly Held Rimini In Contempt For Its Continued Cross-Use, As Rimini Indisputably Used One Licensee's Environment To Develop Modifications For Other Licensees...................................35

            1.    *Rimini's continued cross-use violates the Injunction.* .........................................................36

            2.    *Rimini's other diversionary arguments—including that its contracts permit it to violate the Injunction—are meritless.* ......................................40

# TABLE OF CONTENTS
## (continued)

Page

C. Rimini Violated The Injunction's Ban On Copying Oracle Database, And Its Argument That That Copying Is Licensed Is Not Only Wrong But Admittedly Waived. ..... 44

IV. The District Court Correctly Held That The Patent-Injunction Rule From *TiVo* Does Not Apply Here. ..................................... 49

V. The District Court Did Not Abuse Its Discretion In Imposing Civil Compensatory Sanctions. ................................................. 53

A. The Sanctions Were Compensatory And Not Improperly Coercive. ........................................................................ 54

B. The District Court Properly Determined The Amount Of The Sanctions In Reference To The Copyright Act ............. 56

C. The Court Should Reject Rimini's Premature Attempt To Improperly Cabin The District Court's Attorney's Fees Award. ..................................................................... 59

CONCLUSION ........................................................................... 60

STATEMENT OF RELATED CASES ........................................... 62

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS .......... 63

CERTIFICATE OF SERVICE .................................................... 64

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Adobe Sys. Inc. v. Software Tech*,
   No. 14-02140, 2015 WL 6951875 (N.D. Cal. Nov. 10, 2015) ...................... 57

*Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*,
   721 F.3d 1122 (9th Cir. 2013) .................................................................... 53

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) .................................................................... 39

*BMG Music v. Perez*,
   952 F.2d 318 (9th Cir. 1991) ....................................................... 22, 57, 58

*BMW of N. Am., LLC v. Barreira*,
   633 F. App'x 882 (9th Cir. 2015) ............................................................... 41

*Capitol Recs., Inc. v. Thomas-Rasset*,
   692 F.3d 899 (8th Cir. 2012) ...................................................................... 31

*Cunningham v. David Special Commitment Ctr.*,
   158 F.3d 1035 (9th Cir. 1998) .................................................................... 28

*Cunningham v. Gates*,
   229 F.3d 1271 (9th Cir. 2000) .................................................................... 29

*de Fontbrune v. Wofsy*,
   838 F.3d 992 (9th Cir. 2016) ...................................................................... 57

*Disney Enters., Inc. v. VidAngel Inc.*,
   No. 16-04109, 2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) ................ 49, 50

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ................................................................................... 51

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
   244 F.3d 1128 (9th Cir. 2001) ............................................................... 23, 55

*Fisher v. Tucson Unified Sch. Dist.*,
   588 F. App'x 608 (9th Cir. 2014) ............................................................... 28

iv

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*FTC v. Affordable Media*,
179 F.3d 1228 (9th Cir. 1999)..............................................................22, 23

*Gen. Signal Corp. v. Donallco, Inc.*,
787 F.2d 1376 (9th Cir. 1986).................................................................56

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178 (2017)...........................................................................59

*Halderman v. Pennhurst State Sch. & Hosp.*,
673 F.2d 628 (3d Cir. 1982)....................................................................26

*Hilao v. Est. of Marcos*,
103 F.3d 762 (9th Cir. 1996)...................................................................40

*Hobdy v. Los Angeles Unified Sch. Dist.*,
386 F. App'x 722 (9th Cir. 2010) ............................................................35

*In re Brace*,
829 F. App'x 815 (9th Cir. 2020) ............................................................25

*In re Chase & Sanborn Corp.*,
872 F.2d 397 (11th Cir. 1989)................................................................56

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ...................................................................22

*In re USA Com. Mortg. Co.*,
452 F. App'x 715 (9th Cir. 2011) ...........................................................23

*Int'l Rectifier Corp. v. IXYS Corp.*,
383 F.3d 1312 (Fed. Cir. 2004)..............................................................46

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821, 828 (1994) ......................................................................55

*Irwin v. Mascott*,
370 F.3d 924 (9th Cir. 2004)..................................................................46

v

# TABLE OF AUTHORITIES
(continued)

Page(s)

*K.W. v. Armstrong*,
  789 F.3d 962 (9th Cir. 2015)......................................................24, 29

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005)..................................................53

*Leslie Salt Co. v. United States*,
  55 F.3d 1388 (9th Cir. 1995)....................................................42

*Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
  478 U.S. 421 (1986) ...............................................................54

*Maggio v. Zeitz*,
  333 U.S. 56 (1948)..................................................................26

*Malem Med., Ltd. v. Theos Med. Sys., Inc.*,
  761 F. App'x 762 (9th Cir. 2019) ............................................43

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949) ...........................................................40, 50

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
  926 F.3d 534 (9th Cir. 2019)...................................................55

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004)..................................................30

*Norse v. Henry Holt & Co.*,
  991 F.2d 563 (9th Cir. 1993).....................................................30

*Oracle USA, Inc. v. Rimini St., Inc.*,
  783 F. App'x 707 (9th Cir. 2019) .....................................*passim*

*Oracle USA, Inc. v. Rimini St., Inc.*,
  879 F.3d 948 (9th Cir. 2018).............................................*passim*

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  324 F. Supp. 3d 1157 (D. Nev. 2018)........................................8

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Orantes-Hernandez v. Thornburgh*,
919 F.2d 549 (9th Cir. 1990)............................................................21, 39

*Oriel v. Russel*,
278 U.S. 358 (1929) ...............................................................................26

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)...............................................................31

*Perry v. O'Donnell*,
759 F.2d 702 (9th Cir. 1985)..................................................................60

*Peter v. Nantkwest, Inc.*,
140 S. Ct. 365 (2019).............................................................................51

*Pierson v. Hudson Ins. Co.*,
839 F. App'x 102 (9th Cir. 2020) ..........................................................35

*Plata v. Schwarzenegger*,
560 F.3d 976 (9th Cir. 2009)..................................................................25

*Recchia v. City of Los Angeles Dep't of Animal Servs.*,
889 F.3d 553 (9th Cir. 2018)..................................................................47

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992)................................................................23

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49 (1975).................................................................................31

*Russian Media Grp., LLC v. Cable Am., Inc.*,
598 F.3d 302 (7th Cir. 2010).............................................................31, 32

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
137 S. Ct. 954 (2017).............................................................................51

*Schering Corp. v. Illinois Antibiotics Co.*,
62 F.3d 903 (7th Cir. 1995) ...................................................................23

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Shell Offshore Inc. v. Greenpeace, Inc.*,
   815 F.3d 623 (9th Cir. 2016).......................................................53, 54, 55

*Singh v. Ashcroft*,
   361 F.3d 1152 (9th Cir. 2004)..................................................................35

*Thompson v. Enomoto*,
   815 F.2d 1323 (9th Cir. 1987)..................................................................29

*TiVo Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011)..........................................................*passim*

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ...................................................................................26

*U2 Home Entertainment, Inc. v. Wei Ping Yuan*,
   245 F. App'x 28 (2d Cir. 2007).................................................................58

*United States v. Ayres*,
   166 F.3d 991 (9th Cir. 1999).....................................................................26

*United States v. Ben Zvi*,
   242 F.3d 89 (2d Cir. 2001) .......................................................................45

*United States v. Bright*,
   596 F.3d 683 (9th Cir. 2010).....................................................................23

*United States v. Carrasco-Chairez*,
   371 F. App'x 722 (9th Cir. 2010) .............................................................35

*United States v. Necoechea*,
   986 F.2d 1273 (9th Cir. 1993)...................................................................48

*United States v. Patterson*,
   878 F.3d 215 (6th Cir. 2017).....................................................................45

*United States v. Sommerstedt*,
   481 F. App'x 386 (9th Cir. 2012) .............................................................42

## TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Thrasher*,
483 F.3d 977 (9th Cir. 2007)..................................................... 42

*United States v. U.S. Gypsum Co.*,
340 U.S. 76 (1950)................................................................... 31

*United States v. Yacoubian*,
24 F.3d 1 (9th Cir. 1994)......................................................... 46

STATUTES

17 U.S.C.
§ 502 ........................................................................................ 31
§ 504 ........................................................................... 8, 56, 58
§ 505 ........................................................................................... 8

28 U.S.C.
§ 1291 ................................................................................. 3, 28
§ 1292 ................................................................................... 28

OTHER AUTHORITIES

Wright & Miller, Fed. Prac. & Proc. Juris.
§ 3917 (2d ed.)................................................................... 25, 26
§ 4433 (3d ed.)......................................................................... 45

**INTRODUCTION**

Appellant Rimini Street, Inc. ("Rimini") is an unrepentant serial copyright infringer whose business "was built entirely on its infringement of Oracle's copyrighted software." 3-ER-618. Rimini violated the district court's Injunction against further infringement of Oracle's copyrights and rightly has been held in contempt.

In 2014, the Honorable Larry R. Hicks, and in 2015, a jury, found Rimini liable for infringing Oracle's copyrights. The district court found that Rimini engaged in pervasive copying and cross-use of Oracle's software and documentation without a license to do so and entered an injunction against Rimini. When Rimini appealed the first time, this Court affirmed Rimini's liability for copyright infringement under the federal Copyright Act (the bulk of Rimini's liability), but reversed liability under state computer-fraud laws. *Oracle USA, Inc. v. Rimini St., Inc.* ("*Oracle I*"), 879 F.3d 948, 953-60, 962 (9th Cir. 2018). On remand, the district court entered the operative Injunction at issue here. 3-ER-609-612.

Rimini then appealed a second time, directly challenging the scope of the Injunction, arguing that the Injunction is moot, overbroad, and impermissibly vague. *Oracle USA, Inc. v. Rimini St., Inc.* ("*Oracle II*"), 783 F. App'x 707, 709 (9th Cir. 2019). This Court affirmed the Injunction, merely narrowing the

1

Injunction in two minor respects irrelevant to this appeal. *See id.* at 710-11; *id.* at 711 ("In all other respects, the injunction is not overbroad.").

Undeterred, Rimini proceeded to violate the Injunction. When the district court entered an Order to Show Cause, Rimini responded by improperly challenging the Injunction's affirmed scope. *See, e.g.*, 3-ER-423-457.

The district court held a thorough seven-day contempt hearing with extensive expert testimony, which the district court referred to as "a seven-day bench trial." 1-ER-5; *see* 2-ER-98-343. Interpreting and enforcing his own Injunction, the district judge rejected Rimini's recycled arguments. In a careful opinion, the district court found Rimini in contempt as to five Issues (or categories of conduct) considered in the contempt hearing but declined to find Rimini in contempt as to five other Issues. Thus, the district court limited its contempt order to Rimini's conduct that it found willfully violated the clear terms of the Injunction. The district court concluded that this "contemptuous conduct was extensive, deliberate, and pervasive." 1-ER-54.

Now, in Rimini's third appeal to this Court, Rimini seeks once again to undermine the finality of the Injunction—which is simply inappropriate in a contempt appeal. Rimini largely ignores the district court's thorough findings and conclusions and instead attempts to relitigate issues it already lost or waived regarding the Injunction's scope—such as whether the conduct prohibited by the

Injunction is licensed or complies with copyright law. Rimini raised these very issues in its second appeal, and it lost; and it is improper for Rimini to seek to relitigate those issues here. The only question relevant to this appeal is whether Rimini's unlawful conduct violated the terms *of the Injunction*. Indeed, it is telling that Rimini attached an excerpt of the Constitution to its opening brief, but neglected to attach the Injunction itself.

This Court should affirm the district court's contempt order.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the district court's findings of contempt and corresponding imposition of sanctions under 28 U.S.C. § 1291.

However, this Court does ***not*** have jurisdiction to entertain Rimini's challenge (at 23-30) to the portions of the district court's opinion regarding whether Rimini is in contempt for copying J.D. Edwards ("JDE") source code because Rimini ***was not held in contempt*** for copying that code. Rimini cannot appeal issues on which it prevailed below. Nor can Rimini challenge the portion of the district court's opinion that interpreted the Injunction's provisions concerning JDE source code because this Court has no jurisdiction over a district court's mere interpretation of its own injunction. While this Court does have jurisdiction over a lower court's decision modifying an injunction, the district court here did not modify the Injunction, and Rimini already brought an appeal

3

challenging the scope of the Injunction, which it lost. Finally, there is no ground for exercising pendent appellate jurisdiction over this issue because it is not inextricably intertwined with the appealable issues, as Rimini was not held in contempt for copying JDE source code, and Rimini was not held in contempt for *de minimis* copying of other computer code.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in holding Rimini in contempt for violating the Injunction and in awarding sanctions to Oracle.

## STATEMENT OF THE CASE

### A.     Pre-Trial, Trial, and Post-Trial Proceedings

Oracle owns and develops copyrighted enterprise software programs that help organizations perform critical business functions. Customers purchase licenses to use specific programs. Some customers also purchase separate maintenance contracts that entitle them to copyrighted software upgrades, updates, security patches, and other support services. Rimini Street, Inc., which Seth Ravin founded in 2005, competes with Oracle to provide support services to customers who use Oracle's copyrighted enterprise software. Shortly after its founding, Rimini began copying software from Oracle's websites "in direct contravention of the terms of use" of the websites. *Oracle I*, 879 F.3d at 952. The scale of Rimini's

copying was massive. The cache of Oracle's copyrighted works on Rimini's servers was "approximately a couple times the size of … all of the books in the Library of Congress." 1-SER-114. That trove allowed Rimini to "mak[e] a crap load of money," 5-ER-1048, selling services built around "infringement of Oracle's copyrighted" software. 3-ER-618.

In 2010, upon learning of Rimini's infringing activity, Oracle sued, alleging that Rimini unlawfully made thousands of copies of Oracle's PeopleSoft, JDE, and Siebel software, many of which also use Oracle's Relational Database Management Software ("Database") as the database component. 3-ER-614. Oracle later amended its complaint to add additional claims stemming from the same facts. *Id.* The litigation that ensued "was substantially and significantly focused on Rimini Street's alleged copyright infringement." 3-ER-623.

Rimini admitted that it had copied some of Oracle's copyrighted software, but insisted that its copying was authorized under licensing agreements between Oracle and Rimini's customers. In the alternative, Rimini counterclaimed that, to the extent Oracle's licenses did not authorize Rimini's copying, the licenses constituted copyright misuse. Rimini also counterclaimed for defamation and unfair competition and raised a host of affirmative defenses. *See* 5-ER-1066-67. Before trial, Oracle defeated all three counterclaims and all 11 of Rimini's affirmative defenses, "which were heavily focused on Oracle's claim of copyright

infringement," 3-ER-623, and obtained summary judgment on its infringement claims as to PeopleSoft and Database, 1-SER-116; 5-ER-1067.

Despite those significant pretrial victories, a fundamental issue remained in dispute. A core requirement of the licenses for Oracle's enterprise software is that copies not be cross-used. "'Cross use,' generally speaking, is the creation of development environments, under color of a license of one customer, to support *other* customers," and "[t]here are numerous forms of 'cross use.'" *Oracle I*, 879 F.3d at 956. For more than five years—"literally until trial"—Rimini insisted that it complied with those restrictions. 3-ER-598. Ravin, for instance, testified in his deposition that "[n]ever in the entire history of Rimini" did "it ever occur[] that one customer's software environment ha[d] been used to develop a fix or update that was ultimately delivered to a different customer." 2-SER-314. Rimini's assertions that it "did not engage in cross-use" led the district court to "den[y] portions of Oracle's motion for summary judgment" with respect to JDE and Siebel, 3-ER-598, but the court did find in a summary judgment order that Rimini engaged in cross-use by using environments associated with City of Flint to develop and test updates used for other customers, 1-SER-127-28.

Rimini's assertions that it did not engage in cross-use were untrue—and Rimini sought to maintain this deceit by spoliating evidence. Oracle learned that Rimini had "affirmatively and irretrievably deleted" its massive library of

6

intermingled copies of Oracle materials, which made it impossible for Oracle to identify the source of the copies Rimini used in providing its "support services." 1-SER-147, 181-82; 1-SER-114. The district court sanctioned Rimini for this spoliation and submitted an adverse-inference instruction to the jury, 1-SER-183-84; *see* 3-ER-626, and Oracle eventually painstakingly pieced together evidence disproving Rimini's claims. Rimini ultimately conceded that it routinely used one customer's "development environments … to develop and test software updates for … *other Rimini customers*." 4-ER-696 (citing 1-SER-126) (emphasis added). Ravin then admitted that Rimini engaged in cross-use "all the time," and that his earlier deposition testimony to the contrary was false. *Id.*

Given the overwhelming evidence and Rimini's own belated admissions, Oracle prevailed in all 93 of its copyright claims against Rimini. To remedy Rimini's massive copyright infringement, the jury awarded Oracle the fair market value of a hypothetical license, which it measured at $35,600,000. 3-ER-614; 7-ER-1492. While the jury found Rimini's infringement "innocent" rather than "willful," it assigned the maximum available amount of statutory damages ($30,000) for each of the 93 counts of infringement, for a total of $2,790,000. 4-

ER-835.[1]  The jury also found for Oracle on two state-law computer abuse claims and awarded approximately $14,000,000 in damages.  3-ER-614.

After trial, the district court awarded Oracle costs, attorneys' fees, and prejudgment interest.  3-ER-614; 4-ER-685; *see* 17 U.S.C. § 505.  The court entered a permanent injunction.  3-ER-614-15.

## B.    Rimini Appealed The District Court's Copyright Order On The Merits And Lost.

On appeal, this Court affirmed both the district court's grant of summary judgment and all of the jury's $35.6 million verdict on infringement violations under the Copyright Act, only reversing regarding violations of the California Computer Data Access and Fraud Act and the Nevada Computer Crimes Law. *Oracle I*, 879 F.3d at 962.  Given its reversal as to the state law claims, this Court vacated the district court's issuance of a permanent injunction and attorney's fee award and remanded for the district court to determine whether it would again issue a permanent injunction and fee award based solely on Rimini's copyright infringement.  *Id.* at 964.

On August 14, 2018, the district court granted Oracle's renewed motion for a permanent injunction, enjoining Rimini from continuing to infringe on Oracle's copyrighted software (the "Injunction").  3-ER-613-630; *Oracle USA, Inc. v.*

---

[1] Oracle elected to recover the jury's measure of actual, rather than statutory, damages.  *See* 17 U.S.C. § 504(b)-(c).

8

*Rimini Street, Inc.*, 324 F. Supp. 3d 1157 (D. Nev. 2018).  The district court found that "Rimini's business model … was built entirely on its infringement of Oracle's copyrighted software" and that Rimini "would not have achieved" its market share or business growth without its infringement.  3-ER-618.  The court also observed that Rimini engaged in "significant litigation misconduct" by taking objectively unreasonable positions and "intentionally delet[ing]" a software library after knowing it "was potentially relevant evidence."  3-ER-626-627.

In relevant part, as slightly modified by this Court, the Injunction provides:

2a. Rimini Street shall not reproduce, prepare derivative works from, or distribute PeopleSoft, J.D. Edwards, or Siebel software or documentation unless solely in connection with work for a specific customer that holds a valid, written license agreement for the particular PeopleSoft, J.D. Edwards, or Siebel software and documentation authorizing Rimini Street's specific conduct;

**PeopleSoft**

3. Rimini Street shall not distribute PeopleSoft software or documentation or any derivative works created from or with PeopleSoft software or documentation;

4. Rimini Street shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations;

5. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems;

6. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer

systems to support, troubleshoot, or perform development or testing for any other licensee, including specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee[.]

### J.D. Edwards

7.    Rimini Street shall not distribute J.D. Edwards software or documentation or any derivative works created from or within J.D. Edwards software or documentation;

8.    Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates; …

10. Rimini Street shall not reproduce, prepare derivative works from, or use J.D. Edwards software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's J.D. Edwards environment to develop or test software updates or modifications for the benefit of any other licensee; …

### Oracle Database

15. Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle Database software.

3-ER-609-612 (as modified per this Court's *Oracle II* opinion, 783 F. App'x at 710-11).

The court also granted Oracle's renewed motion for attorneys' fees, awarding Oracle all of its fees.  3-ER-613-630.

### C.    Rimini Appealed The Injunction's Scope And Lost.

Rimini appealed the Injunction, claiming it was overbroad and prohibited too much conduct.  This Court largely affirmed the Injunction, other than

instructing the district court to strike paragraphs nine and thirteen, and the words "or access" in paragraphs eight and twelve. *Oracle II*, 783 F. App'x at 710-11. This Court then held that "[i]n all other respects, the injunction is not overbroad." *Id.* at 711. Rimini also appealed the attorneys' fees award, which this Court affirmed. *See id.*

### D. District Court Finds Rimini Continuing to Violate Oracle's Copyright In "*Rimini II*."

In October 2014, claiming that it changed its procedures in a manner that no longer infringes Oracle's copyrights, Rimini filed a declaratory action against Oracle seeking an order that its supposedly new procedures—what it calls "Process 2.0"—are lawful. *See* 1-SER-167-70. While the findings in that separate case are unnecessary to support the contempt and sanctions here, thus far in *Rimini II,* the district court has granted partial summary judgment to Oracle and held that at least some actions Rimini has taken as a part of its purportedly new procedures continue to infringe Oracle's copyrights. The remaining issues are set for trial. *See* 1-SER-185-93, 202-19. Rimini's illegal copying and cross-use have continued unabated.

### E. The Contempt Proceedings

Oracle suspected that Rimini was not complying with the Injunction. When Rimini refused to provide Oracle with assurances that it was in compliance, Oracle sought discovery into Rimini's post-Injunction conduct. On April 4, 2019, the district court granted Oracle's motion to reopen discovery to determine if Rimini

11

had been complying with the Injunction.  3-ER-589-608; 7-ER-1506 (ECF No. 1215); 7-ER-1507 (ECF No. 1218).  Rimini fought discovery into its practices throughout the post-Injunction discovery period, dramatically restricting the scope of discovery into its misconduct.  Below is a chart of relevant discovery for the post-Injunction contempt stage:

| | *Rimini I* | *Rimini I* Post-Injunction |
|---|---|---|
| Custodians | 54 | 10 |
| RFPs | Unlimited<br>Oracle served 98<br>Rimini served 57 | 15 |
| RFAs | 250 | 10 |
| Interrogatories | 40 | 5 |
| Depositions (party) | 25 | 1 |
| Depositions (non-party) | 20 | 5 subpoenas for document production or testimony |
| Third-Party Subpoenas | Unlimited | |
| Number of Third-Party Productions Received | 317 | 5 |

ECF No. 1474 at 7.

Following the close of discovery—during which Oracle's expert once again painstakingly pieced together evidence demonstrating Rimini's misconduct—Oracle filed its motion for an order to show cause why Rimini should not be held in contempt for violating the Injunction.

The district court issued an Order to Show Cause on 10 Issues and held a seven-day hearing on those Issues.  Rimini was found to be in contempt as to five of the Issues:

- Issue 1: PeopleSoft Files Found on Rimini Systems;

- Issues 2 and 4: A PeopleSoft update that Rimini cross-used for customers Matheson Trucking, Spherion, and Smead;

- Issue 3: A PeopleSoft fix that Rimini cross-used for customer Johnson Controls; and

- Issue 8: Rimini's copying of the Oracle Database file "prvtsidx.plb."

The court found that Rimini's steps to comply with the Injunction were inadequate. *Id.* at 18. "Even after knowing that violations were occurring with regularity, Rimini did not implement protective protocols … until after Oracle discovery had begun for this contempt proceeding and it was clear Rimini was not complying with the Permanent Injunction." *Id.* Rather than accept responsibility for its conduct, Rimini discussed internally that the district court was "out to get it" and told customers that the district court was "sold a bill of goods." 2-SER-291; 2-SER-295; 2-SER-299-300. Rimini's CEO announced that, with a few minor exceptions, the Injunction would have "no impact" on Rimini's operations or support processes. 2-SER-271-72; 2-SER-288; 2-SER-267-68; 1-SER-26 (745:1-6); 2-SER-302-03 (Ravin Dep. 158:20-159:18). Rimini's CEO, General Counsel, and other executives described the Injunction as "ambiguous." 2-SER-261-62; 2-SER-269; 2-SER-280; 2-SER-304 (Ravin Dep. 162:16-163:13).

While Rimini frequently cites its Acceptable Use Policy and employee training regarding that policy as evidence of its compliance efforts, the district court found that "Rimini's annual training on its Acceptable Use Policy has not created a corporate environment where employees are clear on the prohibitions put in place by the Permanent Injunction." 1-ER-19. Moreover, the Acceptable Use Policy did not prohibit all of the enjoined conduct. 1-SER-29-32 (756:13-759:16).

Throughout the post-Injunction enforcement period, Rimini argued for a division between this case and the *Rimini II* case, seeking to persuade the district court that it did not have the power to reach Rimini's contumacious conduct because of its professed change to Process 2.0. The court rejected Rimini's attempts to avoid enforcement of the Injunction by drawing a divide between this case and the *Rimini II* proceeding, finding that "[i]n no uncertain terms, there is no separate and delineated line between *Oracle I* and *Rimini II* based solely on Process 1.0 and 2.0." 1-ER-68.

As the district court held in enforcing its own Injunction, "the permanent injunction does not just enjoin Process 1.0. Rather, the injunction enjoins Process 1.0 *conduct* that has been adjudicated (and upheld on appeal) [as] infringing Oracle's copyrights …. Process 2.0 could include such conduct, just as Process 1.0 did." *Id.*

***Issue 1: PeopleSoft Files Found on Rimini Systems***

14

The district court found Rimini in contempt as to Issue 1. Rimini maintained and forwarded within Rimini PeopleSoft files, with PeopleSoft copyright notices, on its systems in connection with Rimini customers R.R. Donnelley & Sons, G-6 Hospitality, and Texas Children's Hospital, in clear violation of the Injunction. 3-ER-609-612 ¶ 5; 1-ER-79-80; 1-ER-8-20. The district court held that Rimini violated the Injunction by maintaining "the 'psptaxdt.dms' source code file and emails containing PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents" on its systems. 1-ER-79-80. Rimini employees never clearly articulated to customers that they were prohibited from sending Oracle material to Rimini, despite Rimini customers frequently emailing prohibited materials and attaching them to SalesForce support cases. 1-ER-19-20. The district court noted that only twice did Rimini employees "even marginally articulate their responsibilities under the Permanent Injunction to keep Oracle copyrighted material off its systems." 1-ER-19.

Once the prohibited materials were on Rimini's systems, Rimini never followed its own Acceptable Use Policy, did not report the materials to Rimini's security and/or compliance departments, and did not quarantine the prohibited materials. *Id.* In addition to these instances of Oracle copyrighted materials on its systems, Oracle's expert, and *Rimini's* expert at the hearing, testified to a total of 934 Oracle documents with PeopleSoft copyright warnings on Rimini Systems. 1-

15

SER-4 (1110:13-23); 1-SER-17-18 (1038:12-1039:5). Rimini said it finally

quarantined the prohibited Oracle materials, but only after Oracle began discovery

(after overcoming Rimini's objections) into Rimini's Injunction compliance and

without showing evidence of that quarantine. 1-ER-19; 1-SER-22 (1043:21-23).

Rimini's expert also testified that Rimini's in-house counsel told him that Rimini

knew of and had quarantined these 934 PeopleSoft files with Copyright Notices,

but Rimini did not admit to the existence of these PeopleSoft copyrighted files on

its systems until after their existence was uncovered by Oracle's expert. 1-SER-19

(1040:10-17); 1-SER-21-22 (1042:20-1043:2). In some circumstances, Rimini

even moved the prohibited files to other locations on its systems and/or used the

prohibited documents to support its work. 1-ER-19. Considered together with

additional instances of misconduct as to Rimini customers Evergreen and

University of Oklahoma Health Sciences Center (for which Rimini was also found

to have additional Oracle copyrighted material on its systems), the district court

found that Rimini engaged in a pattern of willful noncompliance. 1-ER-19-20.

Rimini concedes that under established copyright law it has no basis for

appealing the district court's contempt finding as to Issue 1. Rimini's only

challenge to the contempt finding as to Issue 1 is its *Tivo* argument, discussed in

Section IV *infra*, that an out-of-circuit standard in patent law should be ported into

this copyright case. This Court should affirm the district court's contempt order as to Issue 1.

### Issues 2 and 4: Matheson Trucking, Spherion & Smead

The district court found Rimini in contempt of court as to Issues 2 and 4 by delivering update HCM200049, developed and tested in the development environment for customer City of Eugene, to customers Spherion, Smead, and Matheson Trucking. 1-ER-20-27. The court found that "Rimini's conduct shows a return to the use of generic environments"—i.e., the banned cross-use—prohibited by the Injunction and that "[n]othing before the Court supports a finding that Rimini's noncompliance was the result of a good faith and reasonable interpretation of the Permanent Injunction." 1-ER-27.

### Issue 3: Johnson Controls

The district court found Rimini in contempt of court as to Issue 3. Rimini willfully violated the Injunction by once again cross-using the PeopleSoft software associated with the City of Eugene, this time to solve a support case that Johnson Controls was experiencing with printing its W-2 forms. 1-ER-27-31. Rimini tested its proposed solution for Johnson Controls in a PeopleSoft environment associated with City of Eugene, even though City of Eugene was not experiencing any similar issues. 1-ER-29. The district court found that this cross-use was "essentially the same as the prohibited conduct held unlawful previously and

17

prohibited by the Permanent Injunction" and again that "[n]othing before the Court supports a finding that Rimini's noncompliance was the result of a good faith and reasonable interpretation of the Permanent Injunction." 1-ER-31.

## Issue 8: Oracle Database file "prvtsidx.plb"

The district court found Rimini in contempt as to Issue 8. Rimini willfully violated the Injunction by maintaining Oracle's prvtsidx.plb file on its systems. 1-ER-48-50. Rimini received the file from customer Australian Bureau of Statistic via SalesForce, creating a copy of the file on Rimini's systems. 1-ER-498. Rimini's violation of the Injunction became willful when Rimini proceeded to open the file instead of quarantining it and informing the customer not to send Oracle copyrighted files to Rimini. 1-ER-50. The court noted that "Rimini failed to follow the Court's explicit rulings on file since 2014." 1-ER-48-50.

## Remaining Issues

The district court discharged its Order to Show Cause on the remaining five Issues, including Issues 7 and 9, which related to copying of J.D. Edwards ("JDE") source code. The court found that, although Rimini could have had a good faith belief that copying small amounts of JDE source code was permitted under the Injunction, it violated the Injunction and any future copying of this nature would result in a finding that Rimini "willfully violated the Permanent Injunction and sanctions of the highest order." 1-ER-47-48. The court further ruled that

"Rimini's reading of the Permanent Injunction does not follow the case history," and that "[i]t is also clear that Rimini is not authorized to make copies of [JDE] software application and documentation to access the software's source code to carry out development and testing of software updates, to make modifications to the software, or to use the customer's software or support materials, to support *other* customers." 1-ER-46-47(emphasis in original).

*Sanctions*

Finding Rimini in contempt for two willful practices under Issue 1 and one non-willful practice under Issue 1, and for willful violations on Issues 2, 3, 4, and 8, the district court imposed sanctions in the amount of $630,000—$100,000 per willful violation and $30,000 for the non-willful violation—plus reasonable attorneys' fees and costs, and ordered Rimini to quarantine all contemptuous files. 1-ER-55-57.

## SUMMARY OF THE ARGUMENT

I. Rimini largely ignores the only question relevant to this appeal—whether the district court abused its discretion in finding that Rimini willfully violated the Injunction. Instead, Rimini improperly reargues challenges to the Injunction's legality and scope that were the subject of Rimini's unsuccessful second appeal in this case. This Court affirmed the scope of the operative Injunction and that scope

is not subject to further review in this contempt appeal. Rimini's attempt to relitigate the Injunction's scope should be soundly rejected.

II. In its lead argument, Rimini challenges the district court's interpretation of the Injunction's ban on copying JDE software to include *de minimis* copying. This Court lacks jurisdiction over this issue because the district court neither held Rimini in contempt as to its *de minimis* copying nor modified the Injunction. Even if this Court had jurisdiction, Rimini's arguments attack the affirmed Injunction language and are incorrect, given that courts may enjoin otherwise lawful conduct when necessary to prevent continued infringement.

III. The few arguments that Rimini raises regarding whether it violated the Injunction lack merit. The district court did not abuse its discretion in finding Rimini in contempt. To the contrary, the district court showed great restraint in limiting the contempt findings to Rimini's actions that clearly violated the Injunction.

First, Rimini concedes that, under established copyright law, it willfully violated the Injunction as to Issue 1 (Rimini Br. 46).

Second, Rimini's arguments against contempt for its continued cross-use (Issues 2, 3 and 4) are meritless. Rimini claims that its activity for which the district court found contempt is different than the type of cross-use that supported liability. The district court found that the contumacious conduct was "essentially

the same as the prohibited conduct held unlawful previously" and this finding is not challenged as clearly erroneous or an abuse of discretion. 1-ER-26, 30. The purportedly "new" conduct is still prohibited "cross-use." And it is not new at all, but the exact same conduct the district court held illegal in February 2014. *See* 1-SER-127-28 (noting Rimini used one customer's environments to develop and test updates for other customers). The Injunction appropriately forbids all such cross-use, as courts can and should enjoin activities of "the same type or class as the unlawful acts" already adjudicated. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).

Third, Rimini argues it should not be held in contempt on Issue 8, even though Rimini concedes (Rimini Br. 43) it waived this argument, and it concedes that ***this Court previously so held***. In Rimini's first appeal, this Court held that "Rimini has waived" the argument it seeks to resurrect here—that "its acts in fact were authorized by the" OLSA licenses—and then ***affirmed*** "the district court's determination of copyright infringement as to Database." *Oracle I*, 879 F.3d at 960. Rimini offers no reason for this Court to revisit the issue it already affirmed. Rimini's arguments also fail because they (i) focus on the scope of the Injunction and (ii) are wrong because neither the Injunction nor the relevant licenses permit the copying of Oracle Database files here.

IV. Rimini contends that the rule governing patent injunctions announced in *TiVo Inc. v. EchoStar Corp.,* 646 F.3d 869 (Fed. Cir. 2011), should govern this case. No court has ever held that the *TiVo* patent law rule (the "colorably different" test) applies to copyright injunction enforcement. The *TiVo* test asks whether a patent-injunction against a specific product also applies to a "new" product that has only minor changes and is thus not colorably different. Such an inquiry is irrelevant here, where the court did not ban the sale of a specific product.

V. Finally, the district court properly awarded Oracle civil compensatory sanctions. The district court carefully calibrated the damages to "sufficiently compensate Oracle for Rimini's contemptuous conduct," including "repeatedly infring[ing] on Oracle's copyrights in essentially the same manner" already held unlawful. 1-ER-55. The sanctions amount was not an abuse of discretion because it was well below the amount permitted for willful violations under the Copyright Act. *See BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991). Moreover, this Court should decline Rimini's invitation to improperly and prematurely cabin the district court's ability to award attorney's fees and costs.

## STANDARD OF REVIEW

This Court reviews "a district court's civil contempt order for an abuse of discretion." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *see In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.

1993) (Under "abuse of discretion standard, [] we will not reverse unless we have a definite and firm conviction that the district court committed a clear error of judgment after weighing the relevant factors."). "[F]indings of fact in connection with the civil contempt adjudication [are reviewed] for clear error." *Affordable Media*, 179 F.3d at 1239.

Where the same judge who entered an injunction later interprets it, that judge is entitled to "broad deference." *In re USA Com. Mortg. Co.*, 452 F. App'x 715, 720 (9th Cir. 2011) ("[I]n light of its experience overseeing these proceedings, the district court is entitled to broad deference in interpreting whether the provisions of its own orders have been satisfied."); *see also Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 908 (7th Cir. 1995) ("When the district judge who is being asked to interpret an injunction is the same judge who entered it, … or when interpretation of the injunction involves the taking of testimony or a piecing together of documents, we should give particularly heavy weight to the district court's interpretation.").

The "entry of sanctions" is reviewed for abuse of discretion. *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010). The same standard applies to the decision to award civil sanctions from one party to the other party, rather than the court, *see F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 (9th Cir. 2001), and to the "amount of the civil contempt sanction," *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

The Court should not review Rimini's challenge to the district court's discussion of *de minimis* copying under any standard, as it lacks appellate jurisdiction over that discussion. *K.W. v. Armstrong*, 789 F.3d 962, 975 (9th Cir. 2015).

## ARGUMENT

### I. Rimini's Recycled Arguments Against the Scope of the Injunction Are Inappropriate for This Contempt Appeal.

When Rimini appealed the scope of the Injunction in 2018, this Court made minor revisions to the Injunction not relevant here and otherwise affirmed. Rimini's attempt to relitigate the scope of the Injunction is inappropriate and not properly before this Court in this contempt appeal.

Rather than addressing whether the district court abused its discretion in holding Rimini in contempt of the Injunction (it did not), Rimini argues that its conduct was supposedly "lawful" under copyright law or "licensed" by its clients' contracts with Oracle. Section I.A argues that Rimini's "*de minimis*" copying was "lawful" and therefore *should* be excluded from the Injunction. Rimini Br. 23-30. Section I.B argues that certain kinds of cross-use *should not* be enjoined, *id.* at 30-36, and that Rimini's supposedly new cross-use is "licensed" and thus "non-infringing" under copyright law, *id.* at 36-41. Section I.C argues that the Injunction is "impossible to square with the terms of the OLSA." *Id.* at 41-44.

Indeed, Section I's heading asserts that the Injunction impermissibly covers "lawful conduct." *Id.* at 23; *see also id.* at 2 (arguing that "Rimini's conduct was licensed"); *id.* at 7 (arguing Rimini's conduct should be covered by its client's "applicable licenses").

Rimini already had a bite at this apple—it largely lost its appeal on the scope of the Injunction. This appeal isn't "Injunction Scope 2.0." All these arguments amount to an impermissible collateral challenge to the Injunction itself and should be rejected.

The only issue appealable from a contempt sanction is the "propriety of the contempt sanction"—*i.e.*, whether the district court abused its discretion in holding that Rimini willfully violated the Injunction. Wright & Miller, Fed. Prac. & Proc. Juris. § 3917 (2d ed.). "[T]he validity of the underlying decree is ***not open to review*** if the time for appealing it has expired," *id.* (emphasis added)—which it has here. *See Oracle II*, 783 F. App'x at 711.

Rimini's challenge of the "civil contempt judgment entered in a post-permanent injunction proceeding" is therefore limited "to the question whether the alleged contemnor has disobeyed the underlying injunction." Wright & Miller, *supra*, § 3917 n.73; *see In re Brace*, 829 F. App'x 815, 816 (9th Cir. 2020) (party "cannot challenge" underlying order in contempt proceeding); *Plata v. Schwarzenegger*, 560 F.3d 976, 980 (9th Cir. 2009) ("[O]rdinarily a litigant

defending a contempt charge may not raise objections to the underlying order that it violated."); *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed[.]"). This rule is well-settled. The Supreme Court long ago made clear that an order "cannot be relitigated or corrected in a subsequent contempt proceeding" because such "collateral attack[s]" violate "res judicata." *Maggio v. Zeitz*, 333 U.S. 56, 68-69 (1948); *see also Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3d Cir. 1982) (applying the "settled rule that the merits of the underlying order may not be called into question in a post-judgment civil contempt proceeding") (citing *Oriel v. Russel*, 278 U.S. 358 (1929)).

And that limitation makes sense. Without it, parties could perennially reopen issues already resolved regarding the propriety of an injunction every time they appeal from another contempt holding—impermissibly retrying the original controversy despite a preclusive final judgment. *See* Wright & Miller, *supra*, § 3917 n.73 (allowing challenges to injunctions in contempt proceedings would lead to "perpetual relitigation"); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009) (such challenges to injunctions "cannot be squared with res judicata" and "the need for finality").

This Court should affirm the district court.

## II. The District Court Did Not Hold Rimini In Contempt For *De Minimis* Copying, So This Court Lacks Jurisdiction Over Rimini's *De Minimis* Copying Arguments.

As discussed below, the district court held Rimini in contempt on "Issues 1, 2, 3, 4, and 8," 1-ER-54, and this Court should affirm those contempt findings. Oddly, Rimini's lead argument in this appeal (subsection I.A) regards ***different*** Issues (7 & 9) on which the district court did ***not*** hold it in contempt. *See* Rimini Br. 23-30; *id.* at 26 ("the district court did not hold Rimini in contempt for" the *de minimis* copying of JDE source code discussed in Issues 7 and 9); 1-ER-48 ("Court discharg[ing] its Order to Show Cause on Issues 7 and 9"). Issues 7 and 9 addressed Rimini's copying of JDE source code, and, while Rimini argued its copying was *de minimis* and therefore permitted, the district court made "clear that Rimini is not permitted [by the Injunction] to copy even snippets or partial segments of Oracle source code into a Technical Design Specification document." 1-ER-47. The court did not hold Rimini in contempt on Issues 7 and 9, but stated that future copying of this nature will result in the district court finding a willful violation of the existing Injunction. *Id.* Thus, Rimini's discussion of *de minimis* copying is irrelevant to this Court's decision whether to affirm or reverse the contempt findings or the sanctions awarded below.

Indeed, the Court lacks jurisdiction over Rimini's *de minimis* arguments relating to potential future violations of the Injunction. Rimini did not contend in

27

its prior Injunction appeal that *de minimis* copying should be permitted despite the Injunction language preventing all copying of JDE source code: "Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates." 1-ER-4.

The district court's clarification that the Injunction prohibits *de minimis* copying of JDE source code did not modify the Injunction. Accordingly, this Court does not have jurisdiction. *See* 28 U.S.C. § 1291 (permitting appeals from final orders, like contempt sanctions); *id.* § 1292 (permitting appeals from orders "modifying" injunctions). At most, the district court's discussion clarified that the Injunction covers *de minimis* copying, and this Court does not have jurisdiction to review an order merely "interpreting" or "clarif[ying]" an injunction, "as opposed to modifying" it. *Fisher v. Tucson Unified Sch. Dist.*, 588 F. App'x 608, 609 (9th Cir. 2014). "Whether an order modifies an existing injunction rather than merely interprets it depends on whether it substantially alters the legal relations of the parties." *Cunningham v. David Special Commitment Ctr.*, 158 F.3d 1035, 1037 (9th Cir. 1998). The district court's interpretation of the Injunction's ban on ***all*** copying of JDE "software source code" to include *de minimis* copying of that source code did not alter any party's legal rights because Rimini already lost its second appeal, which challenged the Injunction's scope. 1-ER-48 (quoting Injunction paragraph 8). So, this Court lacks appellate jurisdiction over the issue.

*See Thompson v. Enomoto*, 815 F.2d 1323, 1327 (9th Cir. 1987) ("[J]urisdictional analysis under section 1292(a)(1) should focus on whether the interlocutory order … 'modifies' the [injunction].").

Nor does this Court have "pendent appellate jurisdiction" over this issue. *K.W.*, 789 F.3d at 975. The issue of *de minimis* copying is not "inextricably intertwined" with the other cross-use and copying that underlie the contempt findings, nor is review of the *de minimis* issue "necessary to ensure meaningful review" of the other issues properly raised in this appeal. *Id.* (citing *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000), *as amended* (Oct. 31, 2000)). The district court's discussion of *de minimis* copying related solely to Rimini's copying of JDE source code, and the district court found Rimini in contempt for violating the Injunction's provisions concerning PeopleSoft and Oracle Database software.

Even if the Court had jurisdiction over this issue, Rimini's arguments lack merit. The Injunction clearly prevents all copying of JDE source code—"Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates," 1-ER-4—and includes no exception for *de minimis* copying. This Court already held that this portion of the Injunction "is not overbroad" after noting that "copying is separately prohibited by the injunction." *Oracle II*, 783 F. App'x at 711.

Rimini argues that *de minimis* copying is lawful under the Copyright Act and thus cannot be prohibited by the Injunction. Rimini Br. 26-30. That conclusion does not follow. Even if *de minimis* copying—**by itself**—is not prohibited by copyright law, 1-ER-48; *but see Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) ("even a small" amount of copying "may sometimes be actionable"), it could still be enjoined given Rimini's pervasive illegal copying.

While the district court noted that the Injunction enjoins only "conduct that has been adjudicated unlawful," as opposed to "conduct not yet adjudicated in *Rimini II*," *see* 1-ER-68, this sort of copying (copying JDE software application and documentation) **was** adjudicated as unlawful in *Rimini I*. 1-ER-46-47; 3-ER-614, 618, 665. And Rimini cannot dispute that its historical copying of Oracle's code has been significant and thus far more than *de minimis*. Rimini is not like the defendant in *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004), an otherwise non-infringer who copied a small portion of a work and should not be held liable. Rather, Rimini's new copying must be evaluated in light of Rimini's total amount of copying. *See id.* (copying not actionable as *de minimis* when "the average audience would not recognize [any] appropriation," which is "not sufficiently significant"; "the law does not concern itself with trifles"). This is not a case of trifles—but significant violations of Oracle's copyright that formed the

basis for Rimini's entire business model. *See* 3-ER-618. As such, prohibiting all such copying going forward enjoins only unlawful conduct.

Moreover, case law is clear that district courts have broad discretion to fashion injunctions based on the "necessities of the particular case" to prevent continued infringement. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). That authority includes the power to enjoin even otherwise-lawful conduct, so long as the decree is tailored to the nature and scope of the case. *See United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88-89 (1950) (injunctions may cover acts "entirely proper when viewed alone" if doing so will prevent future violations); *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012) (holding in copyright infringement case that "a court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct 'standing alone, would have been unassailable'"); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 306-07 (7th Cir. 2010) (upholding injunction preventing transmission of pirated and non-pirated programs "to prevent the evasion of the core prohibition in the decree and to extirpate any lingering effects of the violation sought to be remedied") (citation omitted). District court authority is particularly broad in the copyright context, where injunctions may impose whatever terms the court deems "reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *Perfect 10, Inc. v. Amazon.com,*

*Inc.*, 508 F.3d 1146, 1155 n.1 (9th Cir. 2007) (affirming a copyright injunction that extended to unregistered works because "the Copyright Act gives courts broad authority to issue injunctive relief").

In issuing this Injunction, the district court properly exercised its authority to prohibit acts by Rimini (an adjudicated infringer) that could lead to further infringement—and this Court already affirmed that decision. Given Rimini's "proclivity for unlawful conduct" through copying and cross-using Oracle's code, the district court was justified in enjoining all such copying (even if it included some "otherwise lawful conduct") to "protect the plaintiff's rights against future encroachment." *Russian Media Grp.*, 598 F.3d at 307.

Rimini pretends that this Court previously held that the district court cannot "enjoin conduct" that does not by itself violate copyright law. Rimini Br. 27. But the relevant portion of this Court's opinion merely narrowed a previous version of the Injunction to not prohibit "accessing" source code, and in doing so noted ***both*** that (i) "accessing" a copyrighted work "is not an infringing activity under the Copyright Act" ***and*** (ii) prohibiting accessing "is unnecessary" to prevent illegal copying since "copying is separately prohibited by the injunction." *Oracle II*, 783 F. App'x at 711. Here, the district court reasonably concluded that prohibiting all copying "of Oracle source code into a Technical Design Specification document"—even so-called snippets or *de minimis* copying—is necessary to

32

prevent illegal copying. *See* 1-ER-48. Rimini copies JDE source code from an

environment associated with one customer into its Technical Design Specification

documents so that it can support other customers. 1-SER-7-9 (1125:19-1127:12);

1-SER-12-13 (1251:2-1252:8). This conduct is no different from the "unlawful

conduct" of "copying J.D. Edwards source code in one client's environment to

support other customers" that convinced a jury to find infringement and compelled

entry of Paragraph 8 of the Injunction in the first instance. 1-ER-46-47. This

Court already held that the scope of the copying prevention was appropriate

(indeed, the scope of the prohibition on copying is *why* this Court was comfortable

striking the prohibition on accessing). *See Oracle II*, 783 F. App'x at 711.

Limiting the scope of the Injunction as Rimini requests would be

inappropriate here and is unwarranted in all events.

## III. The District Court Did Not Abuse Its Discretion In Finding Rimini In Contempt For Violating The Injunction.

Rimini has not identified any abuse of discretion from the district court's

finding that Rimini was "in contempt of Court upon Issues 1, 2, 3, 4, and 8." 1-

ER-54. This Court should affirm the district court.

### A. Rimini Concedes It Willfully Violated The Injunction Under Established Copyright Law.

Rimini never disputes that, under established copyright law, it willfully

violated the Injunction in multiple ways with respect to "Issue 1"—*i.e.*, by

maintaining and forwarding PeopleSoft files on its systems on several occasions despite the Injunction's express prohibition. *See* 1-ER-8-20. Rimini only challenges the Issue 1 contempt order by arguing that the *Tivo* patent law standard should apply (it does not apply, as explained *infra* Section IV).

The district court held that "prohibited Oracle copyrighted content" was found on Rimini's systems in a "clear violation of Paragraph 5" of the Injunction ("Rimini shall not … use PeopleSoft software or documentation on … any computer systems other than the specific licensee's own computer systems"). 1-ER-18. Oracle proved multiple instances in which Rimini willfully "forwarded the materials to other Rimini employees and saved the prohibited materials to a share drive on Rimini's systems." *Id.* Rimini broke its own policies by failing to quarantine and delete prohibited files and failed to "implement protective protocols … until after Oracle discovery had begun for this contempt proceeding." 1-ER-19. A "string of violations" together with 934 Oracle files with PeopleSoft copyright notices on Rimini's systems and Rimini's disdainful communications concerning the district court and its Injunction showed Rimini had not substantially complied. 1-ER-18-20.

Rimini's appellate brief ***concedes*** that Rimini is not challenging, and has thus waived, any response under established copyright law to the findings of "contempt of Court upon Issue 1." 1-ER-20. As such, those findings should be

affirmed. *See United States v. Carrasco-Chairez*, 371 F. App'x 722 (9th Cir. 2010) (affirming issue because appellant's "lawyer conceded" that appellant "did not challenge, on appeal, the district court's" resolution of that issue, so that issue was "waived") (citing *Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004)); *see also Pierson v. Hudson Ins. Co.*, 839 F. App'x 102, 104 (9th Cir. 2020) ("Appellant did not challenge the district court's dismissal of her other claims on statute of limitations grounds, [so] that argument is waived."); *Hobdy v. Los Angeles Unified Sch. Dist.*, 386 F. App'x 722, 725 (9th Cir. 2010) (where appellant "does not challenge" certain issues in opening brief, appellant has "waived any challenge to" the court's decision).[2]

### B. The District Court Properly Held Rimini In Contempt For Its Continued Cross-Use, As Rimini Indisputably Used One Licensee's Environment To Develop Modifications For Other Licensees.

In arguing against the district court's contempt findings on Issues 2, 3, and 4, Rimini recycles its argument that the Injunction should not cover all types of cross-use, but only the specific type of cross-use that it engaged in before it was held liable in *Rimini I*. *See* Rimini Br. 30-41. But this argument has been *repeatedly rejected*—by both the district court and this Court. In briefing before

---

[2] Rimini claims that if this Court reverses any part of the judgment, it must vacate all sanctions since they are "indivisible." Rimini Br. 46. That is flatly incorrect. The District Court explicitly awarded $100,000 per willful violation (two under Issue 1 and one each under Issues 2, 3, 4, and 8) and $30,000 for the non-willful conduct under Issue 1. 1-ER-57.

issuance of the current Injunction, Rimini argued that the proposed Injunction's cross-use ban was too broad. 4-ER-646, 649, 660. Then, after the court rejected these arguments in granting the Injunction, 3-ER-613-630, 609-612, Rimini again argued against enjoining all cross-use in an "Emergency Motion to Stay" the Injunction. *See* 1-SER-56-57. The district court again rejected this argument, noting that "Rimini Street raises the same argument and issues it has raised throughout this action which the court has repeatedly denied as without merit." 1-SER-38. And this Court likewise rejected Rimini's arguments against the scope of the Injunction. *Oracle II*, 783 F. App'x at 711. Once again, in its contempt order, the district court rejected this same argument. *See* 1-ER-67-68.

Even if not already rejected (which they were), Rimini's arguments lack any merit and do not demonstrate any abuse of discretion by the district court.

### 1. *Rimini's continued cross-use violates the Injunction.*

Injunction paragraphs 4 and 6 state that Rimini "shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documents other than to support the specific licensee's own internal data processing operation" and "shall not use" one licensee's environment "to develop or test software updates or modifications for the benefit of ***any other licensee***." 3-ER-610 (emphasis added). As relevant to Issues 2 and 4, Rimini does not dispute the district court's findings that it "modif[ied] the SQR" by going "into City of

Eugene's environment and ma[king] the changes in City of Eugene," and then delivered the resulting modifications to ***other clients***, including Spherion, Smead, and Matheson Trucking. 1-ER-23-24; *see* Rimini Br. 34 (conceding it used modification developed in City of Eugene environment for others). Likewise, as relevant to Issue 3, Rimini does not dispute the district court's findings that it provided a solution to a bug for client Johnson Controls by testing the solution locally "in City of Eugene's development environment," even though City of Eugene did not experience the same bug and did not need the fix tested in its environment. 1-ER-28-29; Rimini Br. 36 (conceding it used bug developed in City of Eugene environment for others). The above-described activities are ***explicitly prohibited*** by the Injunction. 1-ER-26; 1-ER-30-31. That should end this Court's inquiry.

Rimini argues only that this activity is different than the activity "previously adjudicated." Rimini Br. 31. Supposedly, the "cross-use" that "was adjudicated in *Rimini I*" was "hosting generic development environments on Rimini's own computer systems" to "support multiple clients at once." *Id.* at 30, 34. Now, Rimini claims, it has "siloed" development environments for each client on the client's own system as part of what it calls Rimini 2.0 support processes. *Id.* at 31. But this purportedly "new" setup (even assuming it is as Rimini describes) does not answer the relevant question: whether Rimini has violated Injunction paragraphs 4

37

and 6 by using one licensee's "software or documents" to support another licensee or using one licensee's environment "to develop or test software updates or modification for the benefit" of another licensee. 3-ER-610. As this Court previously explained, "[a]ny work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer." *Oracle I*, 879 F.3d at 957. ***Any such work*** violates the Injunction's plain terms.[3]

Moreover, Rimini's claim (at 30-31) that using one customer's environment to develop updates for other customers is somehow "new" conduct not previously adjudicated is simply false. In 2014—***more than eight years ago***—the district court held that this Rimini activity was unlicensed: "development environments associated with the City of Flint were not used solely for the City of Flint's internal data process operations," but "were used to develop and test software updates for the City of Flint ***and other Rimini customers with similar software licenses***." 1-

---

[3] Rimini may argue, as it has in the past, 1-SER-75-76, that because this Court's first opinion sustained liability as to PeoplSoft due to Rimini's local hosting, without discussing Rimini's cross-use of PeopleSoft, the Injunction ***should not*** have covered PeopleSoft cross-use. But indisputably, paragraphs 4 and 6 of the Injunction ***do*** forbid the PeopleSoft cross-use at issue here, 3-ER-610, and this Court has affirmed those paragraphs of the Injunction, *Oracle II*, 783 F. App'x at 711. In all events, this Court's prior decision to ***affirm*** liability for PeopleSoft local hosting (making it unnecessary to discuss PeopleSoft cross-use), *Oracle I*, 879 F.3d at 959-60, in no way undermined the district court's finding of liability for PeopleSoft cross-use or its (now-affirmed) decision to enjoin that conduct.

SER-128 (emphasis added). Replace "City of Flint" with "City of Eugene" and that is the exact conduct Rimini has been held in contempt for here. And the district court found, including with respect to Issue 1, that "Rimini repeatedly infringed on Oracle's copyrights in essentially the same manner the Court and a jury previously determined was unlawful," 1-ER-54, a finding which Rimini does not challenge as clearly erroneous or an abuse of discretion.

Even if Rimini had only ever used a generic environment before the liability determination in this case, that conduct would still be "essentially the same" as its "new" conduct. 1-ER-27, 31, 54. Using one customer's environment, rather than a generic environment, to develop updates for multiple customers is not meaningfully different and is still cross-use.[4] If anything, it's a more direct violation of the Injunction, which bars using "a specific licensee's" software or environment to assist a different licensee. 3-ER-610.

Rimini's ongoing cross-use is of "the same type or class as the unlawful acts which the court has found to have been committed," *Orantes-Hernandez*, 919 F.2d at 564, so Rimini's argument (at 30-35) that it did not engage in the exact same cross-use as before is irrelevant. *Cf. Apple Inc. v. Psystar Corp.*, 658 F.3d 1150,

---

[4] As the district court previously explained, "the permanent injunction does not just enjoin Process 1.0. Rather, the injunction enjoins Process 1.0 *conduct* that has been adjudicated (and upheld on appeal) is infringing Oracle's copyrights." 1-ER-67-68 (emphasis added). That conduct includes using one client's "environment to develop and test updates" for the benefit of other licensees. *Id.*

1161 (9th Cir. 2011) (affirming injunction that "extended injunctive relief beyond the four corners of the litigated copyrighted works" even though that conduct overlapped with a separate Florida litigation).

The Supreme Court has explained the dangers of accepting an argument like the one Rimini makes here:

> [Parties cannot argue they are] immune[e] from civil contempt because the plan or scheme which they adopted was not specifically enjoined. … The instant case is an excellent illustration of how [that argument] could operate to prevent accountability for persistent contumacy. Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught.

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192-93 (1949). This Court should affirm Rimini's contempt for violating the clear terms of the Injunction.

### 2. *Rimini's other diversionary arguments—including that its contracts permit it to violate the Injunction—are meritless.*

First, Rimini cannot defend its contempt on the grounds that it contracted with clients to engage in conduct that violates the Injunction. Rimini appears to argue (at 37) that it has a "contractual obligation" to engage in conduct that violates the Injunction. Parties cannot rely on ***their own private contracts*** to justify violating an injunction or federal copyright law. *See, e.g.*, *Hilao v. Est. of Marcos*, 103 F.3d 762, 767 (9th Cir. 1996) (holding that a party agreeing to a

consent order "that directly violated the injunction" in another case does not "excuse[] the violation"); *BMW of N. Am., LLC v. Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015) (holding that accepting online orders to sell trademark-infringing apparel was itself a violation of injunction). Were it otherwise, parties could always circumvent court orders by entering private agreements requiring violation of those orders.

Second, this Court already rejected Rimini's argument that its cross-use is actually "licensed and non-infringing" (Rimini Br. 36-41) twice. In the first appeal on Rimini's liability, this Court rejected Rimini's argument that "'cross-use' is not infringement." *Oracle I*, 879 F.3d at 956-57.

Then, in the subsequent appeal over the scope of the Injunction, Rimini argued again that "the injunction prohibits Rimini from 'us[ing] PeopleSoft software … on one licensee's computer systems to support … [or] for the benefit of any other licensee'—in other words, all forms of so-called 'cross-use,'" and that "'cross-use' as to PeopleSoft … may not be enjoined." *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 18-16554, ECF No. 12 at 42-43 (9th Cir. Nov. 26, 2018). Rimini further argued: "The question … whether Rimini could use a copy of Licensee A's software to make a copy to support Licensee B, when both licensees were current Rimini clients that had identical license rights, is now squarely before the Court. … The injunction cannot be affirmed without addressing this issue." *Id.*, ECF No. 33

41

at 15 (9th Cir. Mar. 14, 2019). This Court rejected Rimini's arguments, affirming the Injunction in all relevant respects and holding that "[i]n all other respects, the injunction is not overbroad" and that "[t]he injunction clearly sets out what conduct is restricted, namely that Rimini shall not reproduce, prepare derivative works from, or distribute software except 'to support the specific licensee's own internal data processing operations.'" *Oracle II*, 783 F. App'x at 711.

Under the mandate rule, the district court was prohibited from reconsidering Rimini's attacks on the Injunction in the contempt proceeding, *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007), and this Court should not consider them either under the "law of the case doctrine," whereby "one panel of an appellate court will not reconsider matters resolved in a prior appeal to another panel in the same case," *United States v. Sommerstedt*, 481 F. App'x 386 (9th Cir. 2012) (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995)).

Finally, Rimini appears (at 39-41) to half-heartedly challenge the sufficiency of some of the court's evidentiary findings. Rimini has not demonstrated any clear error. Instead, Rimini misrepresents those findings in claiming the district court "speculated about" Laurie Gardner's "thought process" (at 39); the court did no such thing (*see* 1-ER-21). Instead, the district court rejected ***Rimini's suggestion*** that "it believed the update" developed in a City of Eugene environment "was

42

needed for and developed for all U.S. clients" (including City of Eugene) as unsupported by the record and found, based on Rimini's internal documents, that Don Sheffield of Rimini "changed the scope in JIRA … so that Rimini engineers could send the update to multiple clients without completing the development work in those environments." 1-ER-25. Among other things, those documents showed Sheffield tested the update in the City of Eugene environment because environments of other clients needing the update were inaccessible. 1-ER-21. Rimini identifies no clear error with these findings, nor could it, as credibility determinations of this sort are uniquely in the province of the district court. *See Malem Med., Ltd. v. Theos Med. Sys., Inc.*, 761 F. App'x 762, 765 (9th Cir. 2019) (While a "civil contempt order is reviewed for abuse of discretion," the district court's "credibility findings are entitled to even greater deference.").[5]

\* \* \*

The district court did not abuse its discretion in finding Rimini in contempt for Issues 2, 3, and 4. This Court should affirm.

---

[5] Rimini faults Oracle for not calling Ms. Gardner "as a witness or depos[ing] her," Rimini Br. 40, but Rimini fails to mention that, at Rimini's urging, Oracle was limited to a single 30(b)(6) witness in discovery, 1-SER-34-35. The district court did not inquire into the subjective intent of the engineers and instead straightforwardly applied the Injunction. Rimini's entire discussion of subjective intent (at 39-41) is irrelevant.

### C. Rimini Violated The Injunction's Ban On Copying Oracle Database, And Its Argument That That Copying Is Licensed Is Not Only Wrong But Admittedly Waived.

The district court also found Rimini in contempt for creating copies of an Oracle Database file on its systems, which Rimini's customer's license (the Oracle License and Service Agreement, or "OLSA") does not permit and, more importantly, violates the Injunction. 1-ER-48-50. Paragraph 15 states "Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle Database software." 3-ER-612. Rimini does not dispute any of the relevant facts supporting the district court's holding that Rimini violated that paragraph. Instead, Rimini argues that the Injunction should not have included this prohibition—*i.e.*, that the Court's application of the Injunction is "impossible to square with the terms of the OLSA." Rimini Br. 41-42; *id.* at 43 (arguing that "the district court's construction of the license was erroneous"). This argument does not support reversal of contempt on Issue 8 for three reasons.

First, Rimini may not challenge the propriety of the Injunction. *Supra* Section I. Because Rimini focuses solely on the license and does not meaningfully dispute that it violated the Injunction as written, this argument should be disregarded.

Second, Rimini *concedes* that it has waived any argument that the OLSA permits this conduct such that the Injunction is overbroad. Rimini Br. 43 ("In a

previous appeal, this Court held that Rimini waived its challenge to the district court's 2014 summary judgment ruling on Oracle Database by failing to brief it in the opening brief."); *id.* at 11 (conceding this Court found Rimini "waived appellate challenge to the district court's finding that the OLSA did not apply"). This Court held that "Rimini has waived" its argument that "its acts in fact were authorized by the" OLSAs and went on to ***affirm*** "the district court's determination of copyright infringement as to Database." *Oracle I*, 879 F.3d at 960.

Despite this judicially recognized waiver, Rimini asserts without support that its "failure to appeal from the Court's *summary judgment* decision in no way forecloses Rimini from defending itself against *contempt*." Rimini Br. 43. Not so. *See, e.g.*, Wright & Miller, Fed. Prac. & Proc. Juris. § 4433 (3d ed.) ("A party who elects to appeal on one issue, omitting another issue on which it lost, is subject to issue preclusion on the issue not appealed."); *United States v. Patterson*, 878 F.3d 215, 218 (6th Cir. 2017) ("[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand."); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived."). Failure to challenge an injunction on direct appeal forbids any "challenge [to] the

legality of the Injunction" in a subsequent "contempt proceeding." *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004); *see United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (same). Rimini's waiver of the OLSA argument absolutely bars making it now.

This Court should reject Rimini's far-fetched attempt to resurrect the argument it waived over four years ago, which depends on misrepresenting a Federal Circuit case. *See* Rimini Br. 44-45. Rimini claims that *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1318 (Fed. Cir. 2004), held that a withdrawn pre-judgment defense is still available in a contempt proceeding. That case held no such thing. Instead, it noted that whether the "affirmative defenses" at issue would be precluded "in a future proceeding" was an "issue that is not before us." *Id.* The court left open the possibility that a defense could be raised in a later case only because it *vacated the injunction* and "the portion of the judgment relating to invalidity and unenforceability [would be] removed on remand"—so the judgment necessarily would "be silent [on the] non-adjudicated defenses." *Id.* Here, the OLSA argument clearly was adjudicated, and this Court *affirmed the Injunction and the district court's resolution* of that defense against Rimini.

In a last-ditch effort to avoid the obvious consequences of its waiver, Rimini asks this Court to review the issue "to prevent manifest injustice." Rimini Br. 45. But Rimini does not explain what "injustice" would result from this Court

continuing to hold this issue waived just as it did over four years ago. *See Oracle I*, 879 F.3d at 960. Rimini points to no new circumstances making a waiver holding any less "just" now. Rimini has sophisticated counsel who made a strategic decision not to appeal this issue. This is not a case involving a pro se litigant who "should be afforded some leniency from the generally strict rules against raising issues" late. *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 562-63 (9th Cir. 2018). This Court should not consider Rimini's waived argument against the district court's already-affirmed OLSA interpretation.[6]

Third, even if this Court were to accept Rimini's invitation to reopen issues that Rimini waived and that the district court and this Court have resolved, the Injunction properly barred the conduct at issue. The OLSA does not permit the copying described in Issue 8. The OLSA permits only the licensee, and not Rimini, to make copies of the Oracle Database software, and the software may be "used" by agents only for purposes of the licensee's internal business operations.

---

[6] Rimini claims that "[a]ffirming the contempt order on this ground would condone a clear instance of copyright misuse by prohibiting direct maintenance of Oracle Database by an Oracle competitor." Rimini Br. 45. But this Court already rejected that argument too, holding that "a restriction on the location of copies would [not] stifle competition [or] run afoul of the copyright misuse doctrine." *Oracle I*, 879 F.3d at 960. While "Rimini's inability to 'local host' may result in inconvenience," this Court held "that restriction on its conduct does not amount to copyright misuse." *Id.*

*See* 1-ER-14-15 (quoting and applying the OLSA); 1-ER-49-50 (same). Copying an Oracle Database file onto Rimini's system violates the Injunction *and* is not authorized by the OLSA because the Database file on Rimini's systems was not being used solely for the Rimini customer's internal business operations.

While Rimini argues that not all copying is prohibited by paragraph 15 of the Injunction, it ignores that this copying—which is not even arguably necessarily done in the context of "making permitted copies of other Oracle enterprise software"—is covered by the Injunction. 1-ER-49. Rimini never disputes it could have (but did not) "quarantine" the file and inform its clients "not to send" it to Rimini's systems. 1-ER-50.

Rimini did not offer any evidence that it can never "use" the Oracle Database program without copying it. Rimini Br. 43. Rather, Rimini cites to its attorneys' closing argument in the contempt proceeding. *Id.* "[C]omments of counsel are not evidence," *United States v. Necoechea*, 986 F.2d 1273, 1283 (9th Cir. 1993), *as amended* (Apr. 15, 1993), and do not show any clear error in the proceedings below. Moreover, Rimini *could* "use" the software *on its clients' systems*; so, it is not true that use requires copying on its system.

The Court should affirm the contempt finding on Issue 8.

## IV.   The District Court Correctly Held That The Patent-Injunction Rule From *TiVo* Does Not Apply Here.

Rimini argues that the district court "erred" in not applying *TiVo*, a Federal Circuit case discussing a rule for contempt hearings involving patent injunctions against certain technologies. Rimini Br. 46. The district court obviously did not abuse its discretion in declining to apply an out-of-circuit case that has never been adopted in this Circuit that is limited to *patent* injunctions. Rimini certainly did not show (or even argue for) any abuse of discretion, given that the *TiVo* standard clearly does *not* apply here.

First, the district court did not abuse its discretion because this Court has not adopted *TiVo*'s patent-injunction rule for copyright injunctions. *See* Rimini Br. 47 (conceding as much). Rimini does not cite a single case—in the Ninth Circuit or anywhere else—applying the "colorably different" test in the copyright context. The only in-circuit case that either party has identified addressing the issue held that *TiVo* does not apply when deciding contempt of a copyright injunction. *See Disney Enters., Inc. v. VidAngel Inc.*, No. 16-04109, 2017 WL 6820015, at *2-3 (C.D. Cal. Sept. 13, 2017); *see also* 1-ER-70-71 & n.10 (district court discussing *Disney* and agreeing that *TiVo* is limited to determining whether "an injunction against patent infringement has been violated").

Second, the *TiVo* framework is unique to patent injunctions. Despite failing to identify any case ever applying *TiVo* to copyright injunctions, Rimini asserts

that "[t]here is no conceivable reason *not* to apply the *TiVo* framework in copyright cases." Rimini Br. 48. Perhaps Rimini cannot find a conceivable reason because it is blinking the obvious one: *TiVo*'s standard is unique to patent law. *See TiVo*, 646 F.3d at 882.

Patent injunctions often relate to specific infringing products, so the *TiVo* standard asks whether supposedly new products are colorably different from previously enjoined ones. *Id.* at 882-84. By contrast, a copyright injunction, like the one here, prohibits an infringer's specific problematic **conduct**; it does not discuss specific products. *See Disney*, 2017 WL 6820015, at \*2.

Rimini urged the district court and now this Court only to examine whether Rimini has articulated a "process"—which it calls "Process 2.0"—that would comply with the Injunction if Rimini always followed it. But Rimini's actions did violate the Injunction, and in some instances, Rimini concedes its actions violated its own "Process 2.0." As Supreme Court has instructed, a party cannot escape "civil contempt because the plan … which they adopted was not specifically enjoined …." *McComb*, 336 U.S. at 192. A process is a plan; a product is not, which is why *TiVo* has no application here.

Rimini cites inapposite case law holding that patent and copyright laws have been interpreted similarly in some irrelevant respects, such as the availability of attorney's fees or equitable defenses like laches. Rimini Br. 48-49 (citing, *e.g.*,

*Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 373 (2019) (attorney's fees); *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 959 (2017) (laches)). None of these cases holds that ***all*** doctrines developed for patents or copyrights ***must*** be imported to the other context. Rather, they simply hold that where the reasoning from a copyright case "easily fits the provision at issue" in a patent case, or vice-versa, it makes sense to interpret similar provisions similarly. *SCA Hygiene*, 137 S. Ct. at 961; *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) (interpreting same language in the Patent Act and Copyright Act the same way). No court has ever found *TiVo*'s patent-specific reasoning "easily fits" into the analysis of whether an adjudicated copyright infringer violated a permanent injunction prohibiting further improper conduct.

Third, Rimini fails to show how the "colorably different" standard could provide any aid even if it applied. *TiVo* asks whether a new product is so different from the old product that it is not barred by the injunction—a "question of fact." 646 F.3d at 883. Here, Rimini violated the clear terms of the Injunction through continued cross-use and unauthorized copying. *See* 1-ER-20, 27, 31, 50. And, again, the district court found that Rimini's conduct here is the "essentially the same" conduct the district court and a jury held was illegal. 1-ER-26, 30, 54; *see* 1-SER-127-28. Rimini's acts are not "colorably different."

Rimini's attempted application of the colorably different standard to this case is unpersuasive:

- Rimini argues (at 50) that it "cannot be held in contempt" for the "JDE *de minimis* copying," but indisputably it was not.

- Rimini claims (at 50) its "cross-use" now is a different type than previously adjudicated. In fact, the district court held that the cross-use for which it held Rimini in contempt is "essentially the same as the prohibited conduct held unlawful and prohibited by the Permanent Injunction." 1-ER-27, 31, 55. In any event, the Injunction bars *all* cross-use and does not limit itself to enjoining only "Process 1.0," but enjoins "cross using one client's Oracle software environment to develop and test updates and modifications for the benefit of another licensee," exactly what Rimini did here. 1-ER-67-68.

- For Oracle Database, Rimini selectively quotes (at 51) the district court's explanation that the situation of clients sending material to Rimini is "strikingly different" than Rimini's prior conduct—but ignores the holding that Rimini's subsequent conduct violated "the direct rulings of this Court," which have been "on file since 2014." 1-ER-50.

- For Peoplesoft files, Rimini argues (at 51-52) that it used to run entire software environments on its system, but made "comprehensive changes" such that now, only in a "handful of instances" did Rimini have Peoplesoft files on its system. But those instances still violated the Injunction. Rimini ignores that those instances are only examples of Rimini's conduct, including an undisputed 934 files of copyrighted materials on Rimini systems. The district court found that Rimini's conduct was "extensive, deliberate and pervasive." 1-ER-54; *see* 1-ER-14, 16, 18, 48.

At bottom, Rimini seems to argue that committing infringing acts *less often* is somehow *colorably different* than the previous infringing acts. Rimini cites no support—in *TiVo* or anywhere else—for that nonsensical position or how it could excuse extensive, deliberate, and pervasive violations of a court order.

Further, in attempting to port the *TiVo* standard to this case, Rimini analogizes to the basic contempt requirement that an action "based on a good faith and reasonable interpretation of the court's order" cannot support contempt. Rimini Br. 47-48 (citing cases).  But the district court *did* evaluate the "foundational tenets" Rimini invokes (*id.*), holding that the Injunction explicitly barred Rimini's conduct and Rimini consequently did *not* act based on a "good faith and reasonable interpretation" of the Injunction for any of the Issues for which it found Rimini in contempt.  1-ER-20, 27, 31, 50.

## V.  The District Court Did Not Abuse Its Discretion In Imposing Civil Compensatory Sanctions.

The district court had well-established authority and discretion in this civil contempt proceeding to impose monetary sanctions against Rimini for its contumacious conduct.  *See Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005) (upholding compensatory fine paid to plaintiff in contempt proceeding).  A civil sanction may "coerce[] compliance with a court order or [be] a remedial sanction meant to compensate the complainant for actual losses," whereas a criminal sanction requires punitive purpose.  *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013).  A civil sanction is compensatory if it "compensate[s] the complainant for losses sustained."  *Lasar*, 399 F.3d at 1111.

Without any evidence of punitive intent, Rimini asserts, essentially by process of elimination, that the sanctions here—$630,000 in damages and a yet-to-be-determined amount of attorney's fees—were punitive. On its view, the sanctions were neither properly coercive nor compensatory and therefore must be punitive, requiring the court to afford Rimini criminal procedures. But these sanctions were a proper civil remedy designed to compensate Oracle for Rimini's extensive misconduct and were less than the district court had the power to impose. The court was well within its discretion and Rimini received all the process it was due.

## A.    The Sanctions Were Compensatory And Not Improperly Coercive.

The district court imposed the $630,000 sanction to "fully compensate Oracle." 1-ER-55. It carefully calibrated the sanction to the nature and extent of the harm caused by Rimini by examining its findings as to Rimini's violations of the Injunction and then imposing a sanction consistent with the statutory damages that could be awarded to Oracle under the Copyright Act. This is precisely the sort of "unconditional monetary sanction" that civil compensatory sanctions "typically" look like. *Shell Offshore*, 815 F.3d at 629. Further, the district court's award of attorney's fees is a standard form of compensatory relief. *See Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 444 n.23 (1986).

Because the sanctions here were designed to compensate Oracle, it does not matter that Rimini could not purge (or clear) the fine by ceasing its contemptuous conduct. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). If a compensatory fine were purgeable, it would be coercive, but it could not serve its remedial purpose. The district court unquestionably had the authority to compensate Oracle. *Shell Offshore*, 815 F.3d at 629.

Rimini points to the district court's comment that its sanctions would "not only compensate Oracle for Rimini's contemptuous behavior, but also compel Rimini to comply with the Court's Orders and abide by the Permanent Injunction going forward" (1-ER-57) as evidence that the district court somehow imposed an improper "coercive" civil contempt sanction. But what matters is not how the court described the relief it gave, but "the character of the relief itself." *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 926 F.3d 534, 538 (9th Cir. 2019). Any monetary sanction will have ***some*** coercive effect—rational parties will stop behavior that costs them—but that does not change the primarily compensatory nature of the sanction. *Id.* If it did, then a court could virtually never award monetary relief to the plaintiff in a civil contempt proceeding, a practice approved by the Supreme Court. *See Bagwell*, 512 U.S. at 828. That the district court ordered that the sanctions be payable to Oracle reinforces their civil compensatory nature and belies the notion that they were designed to punish Rimini. *F.J.*

*Hanshaw Enters.*, 244 F.3d at 1143 (fact that fine was payable to the court as opposed to the other party was indicative of punitive intent).

This case is a far cry from both *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379-80 (9th Cir. 1986), and *In re Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989), on which Rimini relies. In both of those cases, there was no evidence in the record to support the monetary sanctions that the district court imposed. *See Gen. Signal*, 787 F.2d at 1379-80; *Chase & Sanborn*, 872 F.2d at 401. It was therefore unclear whether the sanctions were primarily "intended to be compensatory or coercive" and thus whether payment to the court or to the other party was appropriate. *Chase & Sanborn*, 872 F.2d at 401. Here, the district court made its reasoning for imposition of the sanction and the amount of the sanction clear and explicit. It used the Copyright Act as a guide and granted Oracle an amount comparable to what could have been recovered if Oracle had brought a claim directly for the infringing activity.

## B.     The District Court Properly Determined The Amount Of The Sanctions In Reference To The Copyright Act.

The district court rightly based these compensatory sanctions on the statutory damages provisions of the Copyright Act. Those provisions allow an injured party to recover up to $30,000 for any non-willfully infringed work and up to $150,000 if the work was willfully infringed. *See* 17 U.S.C. § 504(c). Rimini is wrong when it states (at 58) that "this court has never endorsed" the use of

statutory damages as a compensatory contempt sanction. This Court did just that in *BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991), upholding a district court's sanction because it was "no greater than statutory damages for the resulting copyright infringement." *Id.*; *see also Adobe Sys. Inc. v. Software Tech*, No. 14-02140, 2015 WL 6951875, at *6 (N.D. Cal. Nov. 10, 2015) (citing *BMG Music* for the proposition that "a court may award sanctions based on statutory damages for copyright infringement."). *Cf. de Fontbrune v. Wofsy*, 838 F.3d 992, 1005 (9th Cir. 2016), *as amended* (Nov. 14, 2016) (affirming award where "the purpose … was not to punish a harm against the public, but to vindicate de Fontbrune's personal interest in having his copyright respected and to deter further future infringements by Wofsy").

The district court awarded Oracle a $630,000 sanction based on its finding that Rimini acted willfully in contempt of court as to Issues 2, 3, 4, and 8, as well as Issue 1 "for its conduct involving clients G-6 Hospitality and Texas Children's Hospital." 1-ER-57. This was a total of six willful violations for which the court awarded Rimini $100,000 each. *Id.* The court also imposed a sanction of $30,000 for what it deemed was Rimini's "non-willful" conduct involving R.R. Donnelly. *Id.* This sanction was properly calibrated based upon the damages provision of the Copyright Act and was "no greater" than what the court could have awarded. *BMG Music*, 952 F.2d at 320. Upon finding that Rimini acted willfully, the district

court could have awarded up to $150,000 per willful violation. *See* 17 U.S.C. § 504(c)(2).

Rimini asks this court to instead apply *U2 Home Entertainment, Inc. v. Wei Ping Yuan*, 245 F. App'x 28, 30 (2d Cir. 2007), an out-of-circuit unpublished opinion in which the Second Circuit reversed a district court's granting of a contempt sanction equal to "the maximum statutory damages for willful copyright violations." *Id.* (internal quotation marks omitted). Rimini reads this case as standing for the broad proposition that a civil contempt sanction may never be based on the statutory damages provision of the Copyright Act. Rimini's reading of *U2 Home Entertainment* conflicts with this Court's precedent in *BMG Music* and overreads the case, and the district court's behavior here is meaningfully different. In *U2 Home Entertainment*, the court did "not foreclose the possibility that in some civil contempt cases, statutory damages may be useful in estimating actual damages." *Id.* The court instead took issue with the fact that the district court had imposed the "maximum" damages for willful infringement, without explaining how the damages corresponded to the wrongful conduct or its consequences. *Id.*

Here, by contrast, the district court awarded far less than the maximum damages that it could have awarded under the Act. Its sanction was carefully crafted to reach the extent of Rimini's wrongdoing and its impact on Oracle.

### C. The Court Should Reject Rimini's Premature Attempt To Improperly Cabin The District Court's Attorney's Fees Award.

After determining that Oracle also is entitled to attorney's fees and costs, the district court ordered further briefing requiring Oracle to "thoroughly describe and substantiate its claim for fees and costs related to bringing Rimini's contemptuous behavior to the Court's attention." 1-ER-57. Rimini asks this Court to improperly cabin the district court's discretion before it can exercise it. The Court should reject Rimini's arguments out of hand.

Rimini ignores that the district court already signaled that any fee award will be "for fees and costs *related to bringing Rimini's contemptuous behavior to the Court's attention*." 1-ER-55 (emphasis added). That is entirely consistent with the law. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017). Nothing suggests that the award must be a certain amount to meet this standard. What is eventually awarded is a matter for the district court to decide in the first instance and, "in light of the trial court's superior understanding of the litigation, [its judgments] are entitled to substantial deference on appeal." *Id*.

Finally, Rimini argues that any attorney's fee award here would be punitive because its wrongdoing amounted to no more than "a handful of technical, one-off violations of the injunction." Rimini Br. 61. While that may be Rimini's opinion, it's not the view of the district court. Rather, as the district court put it, "Rimini's contemptuous conduct was extensive, deliberate, and pervasive—Rimini

59

repeatedly infringed on Oracle's copyrights in essentially the same manner the Court and a jury previously determined was unlawful." 1-ER-55. Under these circumstances, a sizable fee award is thoroughly justified. *See Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) (upholding attorney fee award in civil contempt proceeding).

**CONCLUSION**

For these reasons, the Court should affirm the district court's order finding Rimini in Contempt of Court for Issues 1, 2, 3, 4, and 8 and imposing statutory sanctions and attorney's fees and costs against Rimini.

Dated: June 17, 2022

Respectfully submitted,

*s/ David B. Salmons*

David B. Salmons
Raechel K. Kummer
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
david.salmons@morganlewis.com
raechel.kummer@morganlewis.com

Benjamin P. Smith
Sharon R. Smith
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

benjamin.smith@morganlewis.com
sharon.smith@morganlewis.com

*Attorneys for Appellees*
*Oracle USA, Inc., Oracle America,*
*Inc., and Oracle International*
*Corporation*

## STATEMENT OF RELATED CASES

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this court.

Dated: June 17, 2022

*s/ David B. Salmons*
David B. Salmons

*Attorneys for Appellees*
*Oracle USA, Inc., Oracle America,*
*Inc., and Oracle International*
*Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** <u>22-15188</u>

I am the attorney or self-represented party.

**This brief contains 13,877 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ David B. Salmons*      **Date** June 17, 2022
*(use "s/[typed name]" to sign electronically filed documents)*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on June 17, 2022.

I further certify that I served the foregoing/attached document(s) via email to all registered case participants on June 17, 2022 because it is a sealed filing.

Dated: June 17, 2022          *s/ David B. Salmons*
                             David B. Salmons

                             *Attorneys for Appellees*
                             *Oracle USA, Inc., Oracle America,*
                             *Inc., and Oracle International*
                             *Corporation*